IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL J. QUILLING, as Receiver for Sardaukar Holdings, IBC and Bradley C. Stark | § § § § | |
| Plaintiff, | § § | NO. 3-05-CV-1976-L |
| VS. | § § | |
| JOHN W. STARK, JR., ET AL. | § § | |
| Defendants. | § § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendants John W. Stark, Jr. and Barbara Stark have filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. For the reasons stated herein, the motion should be denied.

I.

This case arises out of a lawsuit brought by the Securities and Exchange Commission ("SEC") against Bradley C. Stark, Stanley A. Leitner, James A. Rumpf and their respective companies, Sardaukar Holdings, IBC ("Sardaukar"), Megafund Corporation ("Megafund"), and CIG, Ltd. ("CIG"), which is currently pending before this court. *Securities and Exchange Commission v. Megafund Corp.*, No. 3-05-CV-1328-L ("the *Megafund* Litigation"). In that case, the SEC alleges that the defendants raised approximately $13.8 million from at least 70 investors through the sale of unregistered securities by making false representations about the expected rate of return on their investments and by promising that a portion of the profits generated from the sale would be used to benefit charitable causes. According to the SEC, Leitner transferred nearly $11 million of investor

funds to CIG, an offshore company controlled by Rumpf. CIG, in turn, paid $9.5 million to Brad Stark, who allegedly squandered the money on luxury cars, jewelry, travel, and other lavish items. This conduct, if proved, constitutes a violation of the federal securities laws.[1]

On July 5, 2005, the court appointed Michael J. Quilling as the receiver for all defendants in the *Megafund* Litigation. In that capacity, Quilling was authorized to:

> take[ ] exclusive jurisdiction and possession of the assets, monies, securities, claims in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of [the named defendants and relief defendant] and any entities they control ("Receivership Assets"), and the books and records of the Defendants and Relief Defendant ("Receivership Records").

*See* Order, 7/5/05 at 2, ¶ I(1)). The order of appointment further provides:

> The Receiver is hereby authorized to institute, defend, compromise or adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as may in his discretion be advisable or proper for the protection of Receivership Assets or proceeds therefrom, and to institute, prosecute, compromise or adjust such actions or proceedings in state or federal court as may in his judgment be necessary or proper for the collection, preservation and maintenance of Receivership Assets.
>
> The Receiver is hereby authorized to institute such actions or proceedings to impose a constructive trust, obtain possession and/or recover judgment with respect to person or entities who received assets or funds traceable to investor monies. All such actions shall be filed in this Court.

*Id.* at 6, ¶ I(12) & (13)).

On October 5, 2005, the Receiver filed this action against Brad Stark's parents, John W. Stark, Jr. and Barbara Stark ("the Starks"), to recover investor funds and other assets allegedly transferred to them by their son and his wife, Pamela. The complaint asserts claims for constructive

---

[1] The SEC alleges violations of Sections 5(a), (c) & 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), (c) & 77q(a), Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.

trust, disgorgement, and fraudulent transfer. The Starks, both of whom reside in California, now move to dismiss this case for lack of personal jurisdiction. Alternatively, the Starks contend that the complaint fails to state a claim upon which relief can be granted and does not satisfy the pleading requirements of Fed. R. Civ. P. 9(b). The issues have been fully briefed by the parties and the motion is ripe for determination.[2]

## II.

The exercise of personal jurisdiction over a defendant must always comport with the requirements of due process. When a federal court sitting in diversity attempts to exercise extraterritorial jurisdiction over a nonresident defendant, these requirements are met where the defendant has minimum contacts with the forum state. *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (citing cases); *see also Driver v. Helms*, 74 F.R.D. 382, 390 (D.R.I. 1977), *aff'd in relevant part and rev'd in part*, 577 F.2d 147 (1st Cir. 1978), *rev'd*, 100 S.Ct. 774 (1980). However, the due process analysis is different when personal jurisdiction is predicated on a federal statute that allows for nationwide service of process. In such cases, Congress has effectively provided for the national exercise of personal jurisdiction over a defendant based on his contacts with the United States. *Driver*, 74 F.R.D. at 390. Thus, "while the Due Process Clause must be satisfied if a forum is to acquire personal jurisdiction over a defendant, sovereignty defines the scope of the due process test." *Busch*, 11 F.3d at 1258.

---

[2] The court notes that the Starks' motion is not accompanied by a separate brief that sets forth their arguments and authorities as required by Local Civil Rule 7.1(d). Nor does the motion contain citations to any legal authority, other than Fed. R. Civ. P. 12(b)(2) & (b)(6). Because this motion has been pending for several months and is otherwise ripe for disposition, the court will not require the Starks to rebrief their arguments. However, all future filings must comply with the federal rules, including the local rules of this court.

A.

The exercise of personal jurisdiction over the Starks is predicated on two related federal statutes. One statute, 28 U.S.C. § 754, provides, in pertinent part:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.
>
> * * * *
>
> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 754. Another statute, 28 U.S.C. § 1692, authorizes service of process in any district where section 754 filings are made:

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

28 U.S.C. § 1692. Together, these statutes give a receivership court both *in rem* and *in personam* jurisdiction in all districts where property of the receivership estate may be located. *See Securities and Exchange Commission v. Vision Communications, Inc.*, 74 F.3d 287, 290 (D.C. Cir. 1996); *Haile v. Henderson National Bank*, 657 F.2d 816, 823 (6th Cir. 1981), *cert. denied*, 102 S.Ct. 1450 (1982). This promotes judicial efficiency "by permitting courts to manage claims regarding receivership property in a single forum." *Quilling v. Grand Street Trust*, No. 3-04-CV-251, 2005 WL 1983879 at *2 (W.D.N.C. Aug. 12, 2005).

B.

The court entered its order appointing a receiver for Brad Stark and Sardaukar Holdings on July 5, 2005.  Less than 10 days later, on July 11, 2005, the Receiver filed copies of the original complaint and his order of appointment in the *Megafund* Litigation in the United States District Court for the Central District of California, the district where the Starks are located.  (*See* Plf. Resp., Exhs. A & A-1).  The Starks do not dispute these facts.  Instead, they argue that the complaint "does not allege sufficient facts to establish that Plaintiff has properly complied with the requirements of 28 U.S.C. §§ 754 and 1692 to establish jurisdiction over the Defendants and their property."  (Def. Supp. Br. at 2, ¶ 2).  "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 115 S.Ct. 322 (1994), *quoting Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  Once a motion to dismiss is filed, "the plaintiff cannot stand on its pleadings, but must, *through affidavits or otherwise*, set forth specific facts demonstrating that the Court has jurisdiction."  *Earle v. Aramark Corp.*, No. 3-03-CV-2960-K, 2004 WL 1879884 at *2 (N.D. Tex. Aug. 16, 2004) (emphasis added), *quoting Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1981).  The Receiver has met his burden by proving, through affidavit testimony and other evidence, that he timely filed the required documents in the Central District of California in accordance with 28 U.S.C. §§ 754 & 1692.  While it may have been prudent for the Receiver to plead these jurisdictional facts in his complaint, the failure to do so is not grounds for dismissal.

The Starks also point out that they were not served at the address listed in the complaint and that the declaration of the process server is dated five days after service was effected.  Neither defect

prevents the court from exercising personal jurisdiction over the defendants.[3]  Although the Starks were served in Riverside, California, rather than at the Yucaipa, California address listed in the complaint, both cities are located in the Central District of California where the Receiver made his section 754 filings.  There is no requirement that a defendant be served at a particular address so long as service is otherwise proper.  Even if service was technically defective, the Receiver substantially complied with the federal rules.  *See Drill South, Inc. v. International Fidelity Ins. Co.*, 234 F.3d 1232, 1238 (11th Cir. 2000), *cert. denied*, 121 S.Ct. 1958 (2001) ("The Federal Rules of Civil Procedure contemplate that a court may have personal jurisdiction over a defendant served despite imperfect service of process.").  Likewise, the fact that the Starks were served on November 23, 2005, but the process server dated the returns November 28, 2005, does not warrant the dismissal of this action.  *See, e.g. Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984) ("[W]here there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process."); *Dow v. Jones*, 232 F.Supp.2d 491, 497 (D. Md. 2002) (alleged inaccuracies in defendant's physical description on return did not render service defective); *Tention v. Southern Pacific Railroad Co.*, 336 F.Supp. 25 (D.S.C. 1972) (misnomer on return of service not fatal where defendant had been served and was not prejudiced by mistake).

In sum, this court has personal jurisdiction over the Starks pursuant to 28 U.S.C. §§ 754 & 1692.  The pleading deficiencies and technical defects identified by the Starks do not alter that conclusion.  Accordingly, the Starks' motion to dismiss for lack of personal jurisdiction should be denied.

---

[3] The court does not consider whether these technical defects are grounds for dismissal under Fed. R. Civ. P. 12(b)(4) or (5) because the Starks do not challenge the sufficiency of process or service of process.  Moreover, these defenses are waived as they were omitted from the Starks' Rule 12 motion.  *See* Fed. R. Civ. P. 12(h)(1).

III.

The Starks also seek dismissal for failure to state a claim upon which relief can be granted. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1997), *quoting Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 103 S.Ct. 729 (1983). A district court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The complaint must be liberally construed in favor of the plaintiff and the allegations contained therein must be taken as true. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

A.

The exacting standards governing Rule 12(b)(6) motions must be considered in light of the liberal pleading requirements of Fed. R. Civ. P. 8(a). In what has been characterized as a "seminal pleading case," the Supreme Court has reminded lower courts that, in order to survive a motion to dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002), *quoting* Fed. R. Civ. P. 8(a)(2). Except in a limited set of cases, a plaintiff is not required to plead facts supporting each and every element of his claim or legal theory. *Id.* Rather, a complaint is sufficient if it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id., quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). *See also Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (interpreting *Swierkiewicz* to mean that "[a] complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts"). Liberal discovery

rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of unmeritorious claims. *See Swierkiewicz*, 122 S.Ct. at 998.

Cases involving fraud and mistake are subject to more stringent pleading requirements. In such cases, "the circumstances constituting the fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The plaintiff must specifically allege the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation, and what [that person] obtained thereby." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 118 S.Ct. 412 (1997), *quoting Tuchman v. DSC Communications, Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Although the Fifth Circuit has not spoken directly on the subject, most courts hold that Rule 9(b) applies to fraudulent transfer actions. *See Indiana Bell Telephone Co., Inc. v. Lovelady*, No. SA-05-CA-285-RF, 2006 WL 485305 at *1 (W.D. Tex. Jan. 11, 2006) (citing cases).[4]

B.

In his complaint, the Receiver alleges that Sardaukar Holdings operated a *Ponzi* scheme and a fraudulent investment program under the direction and control of Brad Stark. (Plf. Orig. Compl. at 3, ¶ 8). As investor funds were received, Stark systematically diverted a portion of the money to family members, including his parents. (*Id.*). According to the Receiver:

> [Brad] Stark diverted $26,001.13 of investor funds to John Stark. On January 31, 2005, he also caused a loan owed by John and Barbara Stark in the amount of $26,042.02 to March Community Credit Union to be paid using investor funds and on March 18, 2005 he paid the $95,154.43 mortgage in favor of GMAC Mortgage on the home owned by John and Barbara Stark using investor funds. Stark also

---

[4] As the presiding judge in *Lovelady* observed, "[t]his point is debatable under Fifth Circuit law." *Lovelady*, 2006 WL 485305 at *1. Indeed, some courts in other states have refused to apply the Rule 9(b) pleading requirements to actions brought under the Uniform Fraudulent Transfer Act ("UFTA"), "for the 'fraud' proscribed by the UFTA in prohibiting fraudulent transfers is distinct from the actual and constructive 'fraud' covered by Rule 9(b)." *Id.* (citing cases). However, in an analogous situation involving the transfer of assets to avoid collection of a debt, the Fifth Circuit found Rule 9(b) applicable. *Id.*, *citing Brunswick Corp. v. Vineberg*, 370 F.2d 605, 610 (5th Cir. 1967). In light of *Vineberg* and *Lovelady*, this court determines that Fifth Circuit precedent favors applying Rule 9(b) to fraudulent transfer actions.

> paid all travel costs for his parents on trips to Europe and elsewhere for which he spent at least $20,700.78 of investor funds ($6,394.38--John Stark; $14,306.40--Barbara Stark). Finally, Pam Stark transferred at least $10,400.00 of investor funds she received from Sardaukar to Barbara Stark. The Defendants gave no benefit whatsoever to Sardaukar in exchange for the funds and the payment of their obligations and have no legitimate claim to them or the benefits bestowed.

(*Id.* at 3, ¶ 9).

The Starks argue that this pleading is deficient because it fails to allege *specific facts* to support recovery under the theories of constructive trust, disgorgement, and fraudulent transfer. Even under the more exacting standards of Rule 9(b), the complaint is more than sufficient to give the Starks "fair notice" of the Receiver's claims. The existence of a *Ponzi* scheme as alleged in the complaint makes the transfer of investor funds fraudulent as a matter of law. *See, e.g. SEC v. Cook*, No. 3-00-CV-0272-R, 2001 WL 256172 at *3 (N.D. Tex. Mar. 8, 2001) (citing cases). To the extent more detailed allegations are required, the complaint identifies the amount of the transfers, the date of the transfers, the persons or entities who made the transfers, and the persons who received the transfers. Any additional information regarding the transfer of investor funds is peculiarly within the knowledge of the Starks and the defendants in the *Megafund* Litigation. Under such circumstances, "less detail is required in the complaint." *Cadle Co. v. Schultz*, 779 F.Supp. 392, 396 (N.D. Tex. 1991).

## RECOMMENDATION

Defendants' motion to dismiss [Doc. #8] should be denied in its entirety. The Starks should be required to serve a responsive pleading within 10 days after this recommendation is adopted by the district judge. *See* FED. R. CIV. P. 12(a)(4)(A).

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 22, 2006.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE