IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL J. QUILLING, as Receiver    §
for Sardaukar Holdings, IBC and    §
Bradley C. Stark    §
   §
        Plaintiff,    §
   §       NO. 3-05-CV-1976-BD
VS.    §
   §
JOHN W. STARK, JR., ET AL.    §
   §
        Defendants.    §

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael J. Quilling, as Receiver for Sardaukar Holdings, IBC and Bradley C. Stark, has filed a motion for summary judgment with respect to his fraudulent transfer claim against Defendants John W. Stark, Jr. and Barbara Stark ("the Starks"). For the reasons stated herein, the motion is granted.

### I.

This case arises out of a lawsuit brought by the Securities and Exchange Commission ("SEC") against Bradley C. Stark, Stanley A. Leitner, James A. Rumpf and their respective companies, Sardaukar Holdings, IBC ("Sardaukar"), Megafund Corporation ("Megafund"), and CIG, Ltd. ("CIG"). *SEC v. Megafund Corp.*, No. 3-05-CV-1328-L ("the *Megafund* Litigation"). In that case, the SEC alleges that the defendants raised approximately $13.8 million from at least 70 investors through the sale of unregistered securities by making false representations about the expected rate of return on their investments and by promising that a portion of the profits generated from the sale would be used to benefit charitable causes. According to the SEC, Leitner transferred nearly $11 million of investor funds to CIG, an offshore company controlled by Rumpf. CIG, in

turn, paid $9.5 million to Brad Stark and Sardaukar, who allegedly squandered the money on luxury cars, jewelry, travel, and other lavish items.  This conduct, if proved, constitutes a violation of the federal securities laws.[1]

On July 5, 2005, the court appointed Michael J. Quilling as the Receiver for all defendants in the *Megafund* Litigation.  In that capacity, Quilling was authorized to:

> take[ ] exclusive jurisdiction and possession of the assets, monies, securities, claims in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of [the named defendants and relief defendant] and any entities they control ("Receivership Assets"), and the books and records of the Defendants and Relief Defendant ("Receivership Records").

*See* Order, 7/5/05 at 1-2, ¶ I(1)).  The order further provides:

> The Receiver is hereby authorized to institute, defend, compromise or adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as may in his discretion be advisable or proper for the protection of Receivership Assets or proceeds therefrom, and to institute, prosecute, compromise or adjust such actions or proceedings in state or federal court as may in his judgment be necessary or proper for the collection, preservation and maintenance of Receivership Assets.
>
> The Receiver is hereby authorized to institute such actions or proceedings to impose a constructive trust, obtain possession and/or recover judgment with respect to person or entities who received assets or funds traceable to investor monies.  All such actions shall be filed in this Court.

*Id.* at 5-6, ¶ I(12) & (13)).

On October 5, 2005, the Receiver filed this action against the Starks to recover $173,174.06 of investor funds allegedly transferred to them by their son, Brad, and his wife, Pamela, from Sardaukar accounts.  The transfers at issue are:

---

[1] The SEC alleges violations of Sections 5(a), (c) & 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), (c) & 77q(a), Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.

| Date | Amount | Description |
|---|---|---|
| 12/08/04 | $ 832.90 | Continental Airlines-- airfare for John Stark |
| 01/31/05 | $ 24,042.02 | March Community Credit Union--pay off home equity loan on Stark's residence |
| 02/18/05 | $ 3,999.33 | Virgin Atlantic Airlines--airfare for John Stark |
| 03/18/05 | $ 95,154.43 | GMAC Mortgage--pay off mortgage loan on Stark's residence |
| 03/23/05 | $ 11,132.60 | Virgin Atlantic Airlines--airfare for Barbara Stark |
| 04/19/05 | $ 9,274.53 | John Stark |
| 04/19/05 | $ 1,611.65 | Koeln US--airfare for Barbara Stark |
| 05/09/05 | $ 3,000.00 | John Stark |
| 05/10/05 | $ 2,600.00 | Barbara Stark |
| 05/18/05 | $ 6,863.30 | John Stark |
| 06/01/05 | $ 2,600.00 | Barbara Stark |
| 06/07/05 | $ 3,431.65 | John Stark |
| 06/08/05 | $ 2,600.00 | Barbara Stark |
| 06/20/05 | $ 2,600.00 | Barbara Stark |
| 06/24/05 | $ 3,431.65 | John Stark |
| **Total** | **$173,174.06** | |

The Receiver alleges that the Sardaukar investment program was an illegal *Ponzi* scheme, which makes each of the transfers fraudulent as a matter of law. (*See* Plf. Compl. at 3, ¶ 8). The Starks counter that they received the transfers from Sardaukar in good faith and in exchange for reasonably equivalent value. (*See* Def. Ans. at 5). The case is before the court on the Receiver's motion for summary judgment.[2] The issues have been briefed by the parties and the motion is ripe for determination.

II.

---

[2] The Starks also assert a counterclaim against Sardaukar and the Receiver for any damages they are ordered to pay in this case and for "damages and attorney's fees incurred by [the] intentional delay and refusal to provide timely tax-reporting W-2 and/or 1099 forms for [ ] reporting of salary received for the year 2005." (Def. Ans. at 4, ¶ 2-3). Neither the Receiver nor the Starks move for summary judgment on this counterclaim.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where, as here, the party seeking summary judgment has the burden of proof at trial, he must establish "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Once this initial burden is met, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

A.

The Receiver alleges that payments totaling $173,174.06 made to or on behalf of the Starks constitute voidable transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Comm. Code Ann. § 24.001, *et seq*. This statute provides, in pertinent part:

> (a)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1)    with actual intent to hinder, delay, or defraud any creditor of the debtor.

TEX. BUS. & COMM. CODE ANN. § 24.005(a) (Vernon 2002). Ordinarily, the creditor must prove that the challenged transfer was made with the intent to defraud. *See Quilling v. Gilliland*,

3-01-CV-1617-BD, 2002 WL 373560 at *2 (N.D. Tex. Mar. 6, 2002) (Kaplan, J.), *appeal dism'd*, No. 02-10415 (5th Cir. Jun. 3, 2002).  However, in the case of a *Ponzi* scheme, courts have found that the debtor's intent to hinder, delay, or defraud is established by the mere existence of such a scheme. *Id.*; *see also Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) (burden of proving that transfers were made with actual intent to defraud is satisfied by establishing the existence of a *Ponzi* scheme "which is, as a matter of law, insolvent from its inception"); *SEC v. Cook*, No. 3-00-CV-0272-R, 2001 WL 256172 at *3 (N.D. Tex. Mar. 8, 2001), *citing In re Independent Clearing House Co.*, 77 B.R.843, 860 (Bankr. D. Utah 1987) (finding requisite intent to defraud from fact that debtor must have known that *Ponzi* scheme would inevitably collapse and that later investors would lose their investments).

The summary judgment evidence conclusively establishes that Sardaukar was an unlicensed securities broker wholly owned and operated by Brad Stark.  (Plf. MSJ App. at 6, ¶ 3).  Almost all of Sardaukar's revenue came from investor funds.  Those funds were deposited into bank accounts where they were commingled with other investor monies and used by Brad Stark to pay personal expenses rather than legitimate investments.  Any "returns" paid to earlier investors were actually payments from the commingled funds of later investors.  (*Id.* at 7-8, ¶ 8; *see also id.* at 11-23).  These are the features of a classic *Ponzi* scheme. *See Quilling v. Humphries*, No. 3-06-CV-0299-L, 2006 WL 2934276 at *5 n.2 (N.D. Tex. Oct. 13, 2006) (Kaplan, J.), *citing* BLACK'S LAW DICTIONARY 1180 (7th ed. 1999) (describing *Ponzi* scheme as "a fraudulent investment scheme where money from new investors is used to pay 'profits' on the money contributed by earlier investors, without the operation of an actual revenue-producing business other than the raising of new funds by finding more investors").

The evidence further establishes that a total of $173,174.06 was paid to or on behalf of the Starks from Sardaukar accounts between December 8, 2004 and June 24, 2005.  (Plf. MSJ App. at 6-7, ¶ 6 & *id.* at 11-23).  While the Starks tacitly concede receiving those payments, they claim that Sardaukar was a legitimate company involved in currency and business investment.  According to John Stark:

> Sardaukar was a legitimate investment company which was actively investing in new projects in order to create positive return to both new and old clients.  In addition to Tesori [Fine Arts and Collectibles], Sardaukar also invested in Moondoggie stock which was another valuable investment.  Having worked for Sardaukar, I have no reason to believe that Sardaukar was a *Ponzi* scheme as the Receiver alleges.  Likewise, I have no reason to believe that Sardaukar or Bradley Stark were in any way trying to defraud investors.

(Def. MSJ App. at 4, ¶ 5).  However, it is clear that neither John Stark nor his wife, Barbara, who also believes that Sardaukar was a legitimate investment company, have any personal knowledge regarding these matters.  In prior deposition testimony, John Stark admitted that he had no active role in Sardaukar and that the only thing he knew about the business was "that it was making trades of investor money[.]"  (Plf. MSJ App. at 51).  Most, if not all, of the information acquired by the Starks about Sardaukar came from their son, Brad.  This hearsay evidence does not create a genuine issue of material fact for trial.  *See Goodwin v. Johnson*, 132 F.3d 162, 168 (5th Cir. 1997) (hearsay statements in affidavit submitted in opposition to motion for summary judgment were "incompetent summary judgment evidence").[3]

---

[3] Nor can the Starks create a fact issue by alleging "on information and belief" that the Receiver has somehow prevented Brad from providing helpful testimony in support of their arguments.  (*See* Def. MSJ Resp. Br. at 14 n.5 & Def. MSJ App. at 5, ¶ 8).  There is absolutely no evidence to suggest, much less prove, that the Receiver has hindered the ability of the Starks to obtain an affidavit from their son or otherwise defend themselves in this action.

C.

The Starks further allege that they received the transfers from Sardaukar in good faith and in exchange for reasonably equivalent value. Such a claim, if proved, constitutes an affirmative defense under TUFTA. TEX. BUS. & COMM. CODE ANN. § 24.009(a). The "good faith" prong of this defense must be analyzed under an objective, rather than a subjective, standard. The relevant inquiry is what the transferee "objectively knew or should have known instead of examining the transferee's actual knowledge from a subjective standpoint." *Warfield*, 436 F.3d at 559-60, *quoting In re Sherman*, 67 F.3d 1348, 1355 (8th Cir. 1995). Like all affirmative defenses, the party claiming "good faith" bears the burden of proof on this issue. *Gilliland*, 2002 WL 373560 at *3; *Cook*, 2001 WL 256172 at *4.

The only evidence of "good faith" offered by the Starks is their testimony denying any knowledge of a *Ponzi* scheme or attempts by their son to defraud investors. (*See* Def. MSJ App. at 4, ¶ 5 & *id.* at 7, ¶ 3). Notwithstanding these self-serving denials, the evidence strongly suggests that a reasonable person would have inquired further into the legitimacy of the funds before accepting payments from Sardaukar. Both John and Barbara Stark knew that Brad, an unlicensed securities dealer, was involved in futures, commodities, and foreign currency trading. (Plf. MSJ App. at 35, 36, 50). The Starks also knew that Brad had a history of failed business ventures, defaulted on a small business loan, and ran up almost $200,000 on their credit cards. (*Id.* at 30, 46). In 2002, Brad was arrested in New York for possession of counterfeit securities. Among the items seized from his briefcase was a counterfeit check for more than $300,000 payable to John Stark. (*Id.* at 49). Brad pled guilty to the charges and went to prison for six months. (*Id.* at 35, 49; *see also id.* at 87). Shortly after his release, Brad began spending substantial sums of money on luxury cars, travel, jewelry, and other lavish items. (*Id.* at 36, 47-48, 50). The Starks knew that the source of this new-

found wealth was Sardaukar, a business started by Brad and operated out of the family home in Riverside, California.  (*Id.* at 50).  John Stark, who served as President and CEO of Sardaukar, knew the company claimed to have offices around the world that did not exist and officers who had no functioning role or performed any other kind of duties.  (*Id.* at 51, 53).  Under similar circumstances, a reasonable person would have questioned whether funds coming from Sardaukar and Brad Stark were legitimate.  *See Warfield*, 436 F.3d at 560 (failure of transferee to inquire more closely about company operated as a *Ponzi* scheme, in light of "abundant suspicious information he possessed about the people, the scheme, and the previous schemes," raised serious questions about good faith defense).   With no objective evidence that the Starks accepted payments from Sardaukar in good faith, this affirmative defense fails as a matter of law.[4]

## **CONCLUSION**

Plaintiff's motion for summary judgment [Doc. #39] is granted.  The court will enter judgment against John W. Stark, Jr. and Barbara Stark, jointly and severally, in the amount of $173,174.06, together with prejudgment and post-judgment interest as allowed by law.  The Receiver's request for equitable relief, including a declaratory judgment imposing an equitable lien on the Stark's residence in Riverside, California and an order foreclosing on the lien and authorizing the sale of the property, will be determined at a hearing to be held at later date.

SO ORDERED.

---

[4]  The resolution of this issue pretermits consideration of whether the Starks received the transfers from Sardaukar in exchange for reasonably equivalent value.  *See Cook*, 2001 WL 256172 at *4 (declining to consider the issue of reasonably equivalent value where transferee failed to establish good faith).

DATED:  February 7, 2007.


JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE